**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Judge

WARREN LEGARIE, et al.,            )
                                   )
           Plaintiffs,             )
                                   )
  VS.                              )      **NO. C 21-04739 JCS**
                                   )
NICHOLAS DAVID NURSE,              )
                                   )
           Defendant.              )
_____)

                        San Francisco, California
                        Friday, November 19, 2021

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:   (via videoconference)

For Plaintiffs:
                HUNTER PYLE LAW
                1300 Broadway Street - 11th Floor
                Oakland, California  94612
          **BY:   HUNTER PYLE, ATTORNEY AT LAW**

For Defendant:
                GOODWIN PROCTER LLP
                Three Embarcadero Center - Suite 2800
                San Francisco, California  94111
          **BY:   JENNIFER B. FISHER, ATTORNEY AT LAW**

                GOODWIN PROCTER LLP
                601 Marshall Street
                Redwood City, California  94063
          **BY:   ALEXIS COLL-VERY, ATTORNEY AT LAW**

REPORTED BY:   Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
               United States District Court - Official Reporter

```
 1   Friday - November 19, 2021                         9:57 a.m.
 2                        P R O C E E D I N G S
 3                              ---oOo---
 4         THE CLERK:  The next matter we are calling is
 5   21-CV-4739, LeGarie versus Nurse.
 6      Counsel, could you please raise your hands.
 7                      (Pause in proceedings.)
 8         THE CLERK:  I'm looking for Plaintiff's Counsel.  I am
 9   assuming the person labeled "Hunter" is Hunter Pyle.
10         THE COURT:  Well, why don't you promote Hunter and we
11   will find out.
12         THE CLERK:  Okay.
13                    (Pause in the proceedings.)
14         THE CLERK:  So appearances, please, first starting
15   with the Plaintiff and then the Defendant.
16         MR. PYLE:  Yes, good morning, Your Honor, Hunter Pyle
17   for the Plaintiffs.
18         MS. FISHER:  Good morning, Your Honor, Jennifer Fisher
19   and Alexis Coll-Very for Defendant, Mr. Nicholas Nurse.
20         THE COURT:  So, I'm sort of perplexed by the motions
21   and why we are doing this.
22      I mean, these people negotiate deals for a living.  I
23   assume they would negotiate a deal in this case, and the
24   question of venue and personal jurisdiction, where this case
25   gets filed, seems to me to be secondary.
```

1    But you have filed the motion and here is what I think:  I
2 think there is purposeful availment, so I would exercise
3 jurisdiction.
4    The interesting question -- and the one I have questions
5 about -- is venue.
6    And the first question is about 1391(b)(3).  Assuming
7 there is personal jurisdiction, under (b)(3), is there any
8 other place -- district in the United States where jurisdiction
9 is -- where venue is proper and there is personal jurisdiction?
10    And that's really -- I mean, I guess that's a question for
11 either side.  But the Defense made the motion.  Let me go with
12 you first.
13    **MS. FISHER:**  Well, I think, Your Honor, since you
14 found -- since we are moving onto venue -- I mean, I think
15 there is a lot of overlap in the issues there -- but, I mean, I
16 definitely don't think venue here is proper.
17    I think, as we have argued in our motion, the purpose of
18 the contract almost all of the activity related --
19    **THE COURT:**  So, I don't -- I'm asking a very specific
20 question, Ms. Fisher.  And I really need you to address the
21 question I asked.
22    Under (b)(3), if there is personal jurisdiction here,
23 there is venue here; if there is no other place where there is
24 venue and the personal jurisdiction, is there any other place
25 in the United States -- that has got to be a district.  So it

1  has got to be in the United States -- where venue is proper?
2  Otherwise, venue is proper here.
3         **MS. FISHER:**  Well, I mean, I don't -- I don't know
4  that venue would be proper.  The only other contact Mr. Nurse
5  has with the United States -- because he works and lives in
6  Canada most of the year -- is his residency in Florida.
7         **THE COURT:**  So he resides in Florida?
8         **MS. FISHER:**  That's where he is technically a
9  resident, yes.
10         **THE COURT:**  Well, technically a resident -- is he
11  subject to personal jurisdiction there?
12         **MS. FISHER:**  Yes.
13         **THE COURT:**  And for venue purposes, he is a resident.
14         **MS. FISHER:**  Yes.
15         **THE COURT:**  All right.  So then that means that (b)(3)
16  doesn't apply because you could bring this case -- this case
17  could be brought in Florida; you are saying?
18         **MS. FISHER:**  Yes.
19         **THE COURT:**  So the issue is under 129 -- under
20  1391(b)(2), the issue to me is -- and this is -- I will start
21  with Mr. Pyle because I have concerns about the (b)(2) issue --
22  is -- or maybe, Ms. Fisher, you may know more information about
23  it but -- I don't know.  Where does Mr. LeGarie reside
24  physically?  What is his home?
25         **MR. PYLE:**  Mr. LeGarie resides in California.

1  **THE COURT:** No, no. Specifically, what city?

2  **MR. PYLE:** I believe he resides in San Francisco.

3  **THE COURT:** Well, is that your belief or you know?

4  **MR. PYLE:** I would need -- to be perfectly frank,
5  Your Honor, I would need to confirm that.

6  **THE COURT:** Because, you know, under B -- 1391(b)(2),
7  you know, it's -- I would be prepared to find if, you know, he
8  does his -- if he lives and works in San Francisco, that's in
9  the district. Then, you know, a lot of this work he did -- and
10 if he did a lot -- if he did his, you know, his work on this
11 when he was in California from this district; meaning, the
12 conversations he had, et cetera, et cetera -- there are many
13 phone calls. There are many this; many that -- he says in his
14 declaration that he did, you know, the vast bulk of his work in
15 California, if that was in San Francisco in the district,
16 that's one thing. If it's not, it is something quite
17 different.

18 **MR. PYLE:** Understood, Your Honor. And what I know is
19 that his office is in San Francisco, and that much of his work
20 was performed from his office.

21    If the Court wanted a more specific declaration regarding
22 that, we would be happy to provide it to you in very short
23 order.

24 **THE COURT:** Okay. Well, I'm definitely going to need
25 that, one way or another.

1     But that's the -- and I guess I will turn to you,
2  Ms. Fisher or Ms. Coll-Very.  The question is:  Why isn't venue
3  proper for that.
4     It doesn't have to be the place where everything happened.
5  It doesn't even have to be the place where most things
6  happened.  It has to be the place where a substantial part of
7  the things -- and in this case it's a contract claim.
8     And he asserts with evidence that -- and presumably it is
9  going to be in this district -- that he, you know, did a bunch
10 of work on the contract out of which the obligation arises in
11 this district.  Why isn't that enough?
12        **MS. FISHER:**  It is not enough because when you look at
13 where the substantial part of the events or admissions giving
14 rise to the actual claim here, all of those did not occur in
15 this district.
16    When Mr. Nurse initially reached out to Mr. LeGarie, he
17 was in Toronto.  When they entered into the agreement --
18        **THE COURT:**  And Mr. LeGarie was where?
19        **MS. FISHER:**  He says he was in California --
20        **THE COURT:**  San Francisco.
21        **MS. FISHER:**  -- in his declaration.
22        **THE COURT:**  Right.
23        **MS. FISHER:**  And that he has a 415 area code.  He
24 doesn't say San Francisco.
25        **THE COURT:**  Okay.  Well, assuming we get that

1   declaration.
2       **MS. FISHER:**  Assuming we get that fact, he traveled to
3   Toronto to meet with Mr. Nurse.  That is where they entered the
4   contract.
5       And also he does not allege that he was in San Francisco
6   during the key time period between April 19th -- June of 2019
7   and April of 2020, when he was negotiating the contract that is
8   part -- that he claims he should get the commission for.
9       Mr. Nurse was in Toronto at the time and called -- when he
10  called him, the alleged breach is that he fired LeGarie --
11      **THE COURT:**  So you think I should just focus on this
12  last little bit?  I mean, I look on this as -- the allegation
13  is this is a long-term contract; that they had a relationship
14  over a period of years.
15      And that in terms of whether or not a substantial part --
16  it's not the substantial part -- so there can be ten
17  substantial parts; right.  There doesn't have to be just --
18  there is only one -- that in a long-term contract, if you did a
19  lot of things for that contract from a particular place, well,
20  that's a substantial part.
21      **MS. FISHER:**  Well, we would argue that the -- that the
22  substantial parts of this contract were actually performed in
23  Canada when Mr.LeGarie would travel to Canada to meet with the
24  Raptors organization to negotiate with Mr. --
25      **THE COURT:**  So you think he didn't do anything

1   significant in California?

2   **MS. FISHER:** I would agree.  I agree, all the
3   significant events in this case happened in Canada.

4   **THE COURT:** Then we are going to part company because
5   I think that is a frivolous argument.

6   I think that there are ways to argue what you want to
7   argue, but it is not that nothing happened in California that
8   was important.  I think you can't do that.

9   It's -- you know, it is -- this is a long-term
10  relationship in which there is no question but that a lot of
11  the work got done from California.  No question; right?

12  **MS. FISHER:** No, I'm not disputing that fact.  I'm
13  just thinking when you are talking about the most substantial
14  action, that --

15  **THE COURT:** Wait, wait, wait.  You are adding
16  something to the test.  It does not say "the most substantial."

17  It -- if there is any substantial contact with a district,
18  that's enough.  Any.  Not the most; right?  Isn't that correct?

19  **MS. FISHER:** That's correct. But when you look at the
20  course of the scope of the parties' dealings, when you look at
21  where they entered in the contract, where the negotiations
22  occurred, what the purpose of the contract was -- which
23  wouldn't -- nothing would happen with this contract were it --
24  if Mr.LeGarie was not able to get Mr. Nurse a contract with the
25  Toronto Raptors.  That's the only way he would earn a

1  commission -- those negotiations happened in meetings in
2  Toronto.
3          **THE COURT:**  I see.  He didn't make any calls from
4  California?
5          **MS. FISHER:**  He made calls from California.
6          **THE COURT:**  He didn't have meetings with any Toronto
7  Raptors people in California?
8          **MS. FISHER:**  He claims that he did once a year.
9          **THE COURT:**  He did.  The answer to that is he did.
10 This was a multiyear relationship.  That is several meetings at
11 least.  Okay.  I appreciate that.  You can see where I am going
12 with this.
13         **MS. FISHER:**  I do, Your Honor.
14         **THE COURT:**  So, I think that I'm going to ask within a
15 week, Mr. Pyle, you can put in a declaration on the subject of
16 the location of the work -- the specific location of the work
17 that Mr. -- the work and the meetings that Mr.LeGarie said
18 occurred in California, what district those actually occurred
19 in.
20     A week later we can have the opposition from -- if you
21 want to put in something on behalf of the other side, on behalf
22 of Mr. Nurse.  And then we will take it under submission.
23     But assuming that it happens the way Counsel says it is
24 going to happen, the motion will end up being denied except
25 there is no accounting cause of action under California law

1   that is a remedy; but that's somewhat of an aside here.
2       But the question is what to do next.  It seems to me
3   that -- back to where I started, which is, you know, these --
4   both sides are used to negotiating these things.  They had
5   thornier things than this to negotiate involving players.
6       It seems to me -- of course, it is their own money, so it
7   is always a different story when it is your own money -- how
8   did you want to plan to deal with this?
9       I mean, this is -- I don't -- you know, the fact that I
10  think there may be personal jurisdiction and venue here
11  doesn't -- is not a comment on my view of the merits of the
12  case.  Merits of the case are quite something else, and I'm not
13  going to comment on at the moment.
14      But how did you -- can this case be settled and how would
15  you plan to do that?
16          **MR. PYLE:**  Your Honor, thank you for your comments.
17      We spoke with -- we, the parties, have all spoken about
18  ADR.
19          **THE COURT:**  Uh-huh.
20          **MR. PYLE:**  And the agreement was -- because, of
21  course, if you had ruled against the Plaintiff on this motion,
22  there would be nothing to settle -- we pretty much all agreed
23  that we should get over this hurdle; and then we would re-visit
24  ADR.
25      The Plaintiffs have indicated that they are willing to do

1  either private mediation or a settlement conference with a
2  magistrate judge.  Either of those is perfectly fine with us.
3      And my understanding -- and Ms. Fisher can correct me if
4  I'm wrong -- my understanding is that we are anticipating some
5  form of ADR in the not too distant future.
6      **MS. FISHER:**  I think that's right, Your Honor.
7      **THE COURT:**  Do you -- Ms. Fisher, do you-all have a
8  preference?  Let me just say, I'm not inclined to send this to
9  a magistrate judge.  That is a limited resource.  There is lots
10 of private folks.
11     Especially with people who make a living negotiating
12 things, I'm inclined to send it to private ADR; but do you have
13 a preference, Ms. Fisher?
14     **MS. FISHER:**  I don't think we have had the opportunity
15 to talk to our client about a preference, but we are happy to
16 do that.
17     **THE COURT:**  Okay.  All right.  Here is what I would
18 like, by the time of the reply papers on this location of the
19 work -- so it is two weeks -- I would like you to all have met
20 and conferred; decided what ADR you want; and decided when you
21 want it; and filed a -- and filed a notice with the Court
22 saying this is the mediator and this is when it is going to
23 happen.
24     You know, I appreciate the issue about the basketball
25 season; but I can't -- I won't promise you that I'm going to

1  keep all of the discovery and all of the trial out of the
2  basketball season.  I'm not even going to promise you I'm going
3  to keep a substantial part of it out of the basketball season.
4      The basketball season lasts, all in, nine months a year.
5  I'm not going to have this case go for three years or two years
6  when it's a -- it is a very simple case.  It should be done in
7  a year.  It's -- it's an oddity of the -- so I'm not going to
8  go all the way to say:  Well, I'm going to have a trial in the
9  summer of 2023.  I will not be doing that.
10      I'm happy to have a trial, you know, in February of 2023,
11 which is probably four or five months before you want one; but
12 I'm not willing to go beyond that.
13      So here is what I would also ask you to do is make me a
14 proposal for a schedule that you-all can live with, also in
15 that -- at the time you are doing this notice to the Court
16 about ADR on a proposed schedule that has a trial in February
17 of 2023.
18      I appreciate that that's during the basketball season, but
19 I cannot -- I can't straddle two basketball seasons with this
20 case and accommodate that.
21      The cases we have got are stacked up and circling; and
22 every time I put off one case, it jams up the calendar for the
23 later cases that come in.
24      So I'm not prepared to have, okay, you only have to do the
25 depositions of the important people this coming summer, and

1   then the next summer in 2022 and then the following summer we
2   are going to do the trial.  I will not do that.  It takes too
3   long.
4            **MS. COLL-VERY:**  Your Honor, I fully appreciate that.
5   One of the driving factors -- I think it is in our papers as to
6   the lengthier schedule than we ordinarily would have
7   proposed -- is that we expect a lot of cross border discovery.
8            I think much of the key discovery, if we get to that
9   point, is going to be with the Raptors.  They are in Canada --
10  I assume.  I don't know, but I can see a lot of issues arising
11  from Hague procedures.  And that's part of what also drew that.
12  It wasn't so --
13           **THE COURT:**  You run into Hauge procedures, you run
14  into Hauge procedures; but I think that is a red herring.
15           I mean, it can be created.  And maybe the Raptors will
16  just create it; but it is -- it would be -- I have had many
17  cases with Canadian defendants and Canadian witnesses, and I
18  have never -- I have been doing this 21 years -- had anyone
19  other than stipulate we are going to do it this way, we are
20  going to do it here and come for depositions.  We never had to
21  go through the Hague for Canada.
22           So, I will consider it if it happens.  I will also
23  consider it tactical rather than an actual good-faith exercise
24  of rights.  There may be nothing I can do about that.
25           And it is not up to Mr. Nurse -- except that it is up to

|   |   |
|---|---|
| 1 | Mr. Nurse -- because if he asks the Raptors to accommodate him, |
| 2 | they may be willing to accommodate him; and I would expect him |
| 3 | to do that. |
| 4 |     So, I'm not -- we will get to that bridge when we cross |
| 5 | it.  Right now I'm ruling out an idea of a trial that late. |
| 6 | You come up with a proposed joint schedule for the case and |
| 7 | file that also in two weeks.  You can do that as well. |
| 8 |     **MR. PYLE:**  Your Honor? |
| 9 |     **THE COURT:**  Yes. |
| 10 |     **MR. PYLE:**  Just to be clear, what I hear you saying is |
| 11 | that you are not going to refer this case to a magistrate judge |
| 12 | for a settlement.  So we shouldn't spend any time thinking |
| 13 | about that. |
| 14 |     **THE COURT:**  Right.  There are two choices.  You pick |
| 15 | your own mediator and pay them privately or use the Court's ADR |
| 16 | panel. |
| 17 |     **MR. PYLE:**  Okay, great.  Thank you. |
| 18 |     **THE COURT:**  Those are the two choices.  Maybe there |
| 19 | are other choices I haven't thought about but not a magistrate |
| 20 | judge.  They have -- that's a very limited resource.  And I |
| 21 | think for parties that negotiate contracts for a living, they |
| 22 | don't need that resource. |
| 23 |     **MR. PYLE:**  Understood. |
| 24 |     **THE COURT:**  Karen, I'm going to put a case management |
| 25 | conference 90 days out just so I can check in with everybody. |

Karen will give us a date.

(Pause in the proceedings.)

**THE CLERK:** How about February 25th at 2:00 p.m.?

**MS. FISHER:** That works for me, Your Honor.

**THE COURT:** Okay.

**MR. PYLE:** That also works for Plaintiffs, Your Honor. Thank you.

**THE COURT:** All right. We will do that. And if you would both give me an updated joint statement a week in advance, I would appreciate it.

**THE CLERK:** And just to let the parties know that at this point in time it will be by Zoom.

**THE COURT:** Yes, so far.

**MR. PYLE:** Thank you.

**THE COURT:** Who knows. So far by Zoom. Okay. Thank you-all. I appreciate it.

**MR. PYLE:** Thank you very much, Your Honor.

**MS. FISHER:** Thank you.

**MS. COLL-VERY:** Thank you, Your Honor.

(Proceedings adjourned at 10:17 a.m.)

---oOo---

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, December 1, 2021

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter