United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WARREN LEGARIE, et al., | Case No. 21-cv-04739-JCS |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| NICHOLAS DAVID NURSE, | Re: Dkt. No. 17 |
| Defendant. | |

## I.     INTRODUCTION

This action is brought by Plaintiffs Warren LeGarie, a California resident, and his company, LeGarie Management, Inc. ("LGM"), which is a California corporation. In the Complaint, Plaintiffs allege that Defendant Nicholas Nurse breached an oral agreement to pay Plaintiffs a commission for a contract Nurse entered into in 2020 with a Canadian basketball team—the Toronto Raptors—to serve as the team's head coach in Toronto. Presently before the Court is Defendant's Motion to Dismiss Complaint ("Motion") in which Nurse moves to dismiss the Complaint for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively. In the Motion, Nurse also moves to dismiss Claim Five, for an accounting, under Federal Rule of Civil Procedure 12(b)(6) on the basis that it fails to state a claim. A hearing on the Motion was held on November 19, 2021. Following the hearing, Plaintiffs supplied a supplemental declaration providing additional facts relating to venue in this district. Defendant did not file a response to the supplemental declaration and the deadline to do so has now passed.   For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Factual Background

LeGarie is a resident of San Francisco, California and has resided in California since 1980. Compl. ¶¶ 5, 9; Declaration of Warren LeGarie in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("LeGarie Decl.") ¶ 2; Supplemental Declaration of Warren LeGarie ("LeGarie Supp. Decl.") ¶ 1. He is the Founder and President of LGM, a California corporation based in San Francisco, California. Comp. ¶¶ 5–6, 10;  LeGarie Decl. ¶ 3.  For the past 20 years, LeGarie and his company have "represented top coaches, front office personnel and executives across the NBA."  Compl. ¶ 16; LeGarie Decl. ¶ 4.  According to LeGarie, "[a]s an agent for these individuals, [his] role is to represent them in negotiating contracts with various NBA teams." LeGarie Decl. ¶ 4.  He states in his declaration that "[t]o do that [he has] to build strong relationships where we have confidence in one another[,]" which "always takes time."  Id.  He states further that "[a]s a result, [his] relationships with [his] clients are on-going, and typically last for many years."  Id.

Nurse is the head coach for the Toronto Raptors basketball team.  Compl. ¶¶ 7; Declaration of Nicholas Nurse ("Nurse Decl.") ¶ 2. He has worked with the Raptors in a coaching capacity since 2013.  Id.  He has been a resident of Florida for the past five years and before that he was a resident of Texas. Id. ¶ 3.  He has never been a California resident.  Id. ¶ 4.  Nurse states further that he has "never owned property in California, been employed in California, maintained an office in California, or conducted business in California."  Id.   According to Nurse, as a coach for the Raptors, he spends "nearly the entirety of the year based in Toronto, Canada." Id.

The relationship between LeGarie and Nurse began in 2013, when Nurse entered into discussions with the Toronto Raptors about the possibility of an assistant coaching position. Compl. ¶ 17; Nurse Decl. ¶¶ 5-6; LeGarie Decl. ¶ 5.  At that time, Nurse was coaching the Rio Grande Valley Vipers (an NBA G-League team associated with the Houston Rockets) and residing in Texas. Nurse Decl. ¶ 5.  Brian Colangelo, the President and General Manager of the Raptors at the time, watched the Vipers play and invited Nurse to fly to Toronto to meet with the Raptors' front office about potentially joining as an assistant coach.  Id.  In Toronto, Nurse met with other

United States District Court
Northern District of California

Raptors coaches. *Id*.  During that meeting, Nurse mentioned that he did not have an agent, and asked for a recommendation. *Id*. It was suggested that Nurse contact LeGarie, who represented other clients involved in the Raptors organization. *Id*.

From Toronto, Nurse called LeGarie to discuss his contract with the Raptors. Nurse Decl. ¶ 6.  LeGarie was in San Francisco at the time, and Nurse reached him at a number that had a 415 area code.  LeGarie Decl. ¶ 5; LeGarie Supp. Decl. ¶ 5.  According to LeGarie, Nurse asked LeGarie to be his agent and LeGarie agreed during this initial telephone conversation.  *Id.*  ¶ 7.  Nurse states in his declaration that following the telephone conversation "LeGarie traveled to Toronto to meet with [Nurse], and he orally agreed to help [him] review the [assistant coach] contract." Nurse Decl. ¶ 6.

According to LeGarie, he was Nurse's agent from 2013 to 2020 under "an open-ended agreement that resulted in ongoing negotiations between [LeGarie], on behalf of Mr. Nurse, and the Toronto Raptors."  LeGarie Decl. ¶¶ 8-9.  There was no written contract between Nurse and LeGarie.  Compl. ¶ 19 (alleging there was an "oral representation contract" between LeGarie and Nurse).  LeGarie states in his declaration that he sent at least seven invoices to Nurse during the period he represented him, between 2013 and 2020.  LeGarie Decl.  ¶¶ 9, 20 & Ex. 1 (copies of invoices sent to Nurse between November 6, 2015 and March 1, 2018);  *see also* Compl. ¶ 19 ("Plaintiffs invoiced Defendant NURSE at a four percent (4%) rate on Defendant Nurse's 2015-2016, 2016-2017 and 2017-2018 employment contracts and at a three percent (3%) rate on Defendant Nurse's 2018-2019 employment contract.").  The invoices were from LGM and listed a San Francisco address for the company.  LeGarie Decl. ¶. 1.  They stated that checks should be made out to Warren LeGarie Management and that wire transfers may be made to a Bank of America branch located in Santa Monica, California.  LeGarie Decl., Ex. 1.  According to LeGarie, Nurse paid the invoices by check at least twice and by wire transfer at least four times. LeGarie Decl. ¶ 21.

Nurse states that he has "never traveled to California to meet with LeGarie or anyone else from LGM."  Nurse Decl. ¶ 10.  He has engaged in "coaching-related travel" to California, however, "including basketball games against NBA teams in California and player training

sessions in Los Angeles, and attending one pro-am golf tournament." *Id.*   LeGarie estimates that "prior to the pandemic [he] met with Nurse at least once per year in California" and that "[d]uring these in-person meetings" LeGarie provided Nurse with "updates regarding the state of the Raptor's employment relationship with him" and they discussed Nurse's "future and career." LeGarie Decl., ¶ 16. According to Nurse, LeGarie also came to Toronto "during the basketball season to meet with [him] and with Raptors executives and the front office."  Nurse Decl. ¶ 11.

LeGarie states that 90% of the work he performed on Nurse's behalf was performed in San Francisco, California.  LeGarie Decl. ¶ 19; LeGarie Supp. Decl. ¶ 7.  This work included talking on the phone with Toronto Raptors executives Bobby Webster and Masai Ujiri approximately 50 times during the period when he represented Nurse.  LeGarie Decl.  ¶ 14.  According to LeGarie, he also met with Webster and Ujiri in person in California approximately five times during that period.  *Id.* ¶ 15. LeGarie's work on behalf of Nurse also "included talking with other NBA executives, coaches, and front office personnel about Mr. Nurse, and attending basketball games in which Mr. Nurse was coaching."  *Id.* ¶ 19.  He states that "[t]he vast majority of this work was performed in California."  *Id.*

In June 2019, Nurse wanted to renegotiate his contract.  Nurse Decl. ¶ 12.  The Raptors initially were not interested but in April 2020, they contacted Nurse directly and informed him that they were ready to consider a new contract. *Id.* At this point, Nurse decided to change agents and so he called LeGarie from Toronto to tell him he did not intend to use LeGarie as his agent going forward.  *Id.* ¶ 13. Nurse states in his declaration that he believes that LeGarie was in Costa Rica when Nurse spoke with him.  *Id.*  Plaintiffs have supplied a declaration from Wendy Cohn, an attorney who represented Plaintiffs in pre-litigation discussions with Nurse, stating that in May 2021 she received a series of emails from Andrew Latack, Senior Vice President of Business and Legal Affairs at Klutch Sports Group ("Klutch") informing her that Klutch was Nurse's agent and that correspondence for Nurse should be directed to Latack at an address in Beverly Hills, California.  Declaration of Wendy J. Cohn in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Cohn Decl.") ¶¶ 2-5 & Ex. 1 (emails).

**B.      The Motion**

In the Motion, Nurse seeks dismissal of the complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure based on lack of personal jurisdiction.  Motion at 4-13.  He contends there is no general jurisdiction because he has not engaged in "continuous and systematic general business contacts" in California.  *Id.* at 4 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  He further asserts that Plaintiffs cannot establish personal jurisdiction in California under the doctrine of specific jurisdiction because Nurse's contacts with California are "limited and infrequent" and therefore, "exercising jurisdiction over Nurse in California would be manifestly unreasonable."  *Id.* at 5.

Nurse further contends venue in this district is improper and therefore seeks dismissal of the complaint under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  *Id.*  at 13.  According to Nurse, none of the criteria for venue set forth in 28 U.S.C. § 1291(b), listing the criteria for venue in federal district courts, applies because: 1) he does not reside in this district; 2) none of the events that gave rise to Plaintiffs' claims occurred in this district; and 3) he is not subject to personal jurisdiction in this district.  *Id.*  at 13-14.

Finally, Nurse argues that Plaintiffs' claim for an accounting (Claim Five) fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Id.*  at 15-18.  First, he argues that the claim fails because accounting is a remedy rather than a standalone claim.  *Id.* at 15-16 (citing *Amer v. Wells Fargo Bank NA*, No. 17-CV-03872-JCS, 2017 WL 4865564, at *13 (N.D. Cal. Oct. 27, 2017) (quoting *Batt v. City & County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007) (citation omitted), disapproved on other grounds by *McWilliams v. City of Long Beach*, 56 Cal. 4th 613 (2013)).  Second, Nurse contends "a plaintiff seeking an accounting must adequately plead facts indicating (1) that there was a 'special relationship with the plaintiff, such as in cases involving trusts, partnerships and domestic relations, or fiduciary relationships,' *Johnson v. Lewis*, No. LA CV 17-01877 JAK (Ex), 2018 WL 4998278, at *8 (C.D. Cal. May 30, 2018) (internal quotations omitted); and (2) 'that [plaintiff] is owed money and that the calculation of the amount owing would be so complicated that it can only be done by means of an accounting,' *Hutchins v. Nationstar Mortg. LLC*, No. 16-CV-7067-PJH, 2017 WL 2021363, at *5 (N.D. Cal. May 12,

United States District Court
Northern District of California

1    2017).” *Id.* at 16-17.  According to Nurse, Plaintiffs' allegations are not sufficient as to either of

2    these requirements.

3    **III.    ANALYSIS**

4          **A.   Whether There is Personal Jurisdiction over Nurse[2]**

5               **1.   Legal Standards**

6                    a.   Rule 12(b)(2)

7          A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil

8    Procedure for lack of personal jurisdiction.  "When a defendant moves to dismiss for lack of

9    personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction

10   over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Where,

11   as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff

12   need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911

13   F.3d 1357, 1361 (9th Cir.1990)).  "Although the plaintiff 'cannot simply rest on the bare

14   allegations of its complaint,' … uncontroverted allegations in the complaint must be taken as

15   true." *Schwarzenegger v. Fred Motor Corp.*, 374 F.3d 797, 800 (9th Cir. 1998) (quoting *Amba*

16   *Marketing Systems, Inc. v. Jobar International, Inc*., 551 F.2d 784, 787 (9th Cir.1977)).

17   "Conflicts between parties over statements contained in affidavits must be resolved in the

18   plaintiff's favor." *Id.* (citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.

19   1996)).

20               b.   Standards Governing Exercise of Personal Jurisdiction

21          "Where . . . there is no applicable federal statute governing personal jurisdiction, the

22   district court applies the law of the state in which the district court sits." *Dole Food Company,*

23   *Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).  "Under California's long-arm statute,

24   California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the

25   Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 571 U.S. 117, 125

26

27   _____

28   [2] Because Plaintiffs do not dispute that there is no general jurisdiction the Court addresses only the
     question of whether there is personal jurisdiction over Nurse under the doctrine of specific
     jurisdiction.

United States District Court
Northern District of California

(2014) (quoting Cal. Civ. Proc. Code § 410.10).  Thus, the Court must determine whether the exercise of personal jurisdiction over Nurse "comports with the limits imposed by federal due process."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)).

"Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9 (1984)).   General jurisdiction may be established when a defendant's contacts with a state are "substantial" or "continuous and systematic" such that the defendant "can be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. at 924.   It is undisputed that that standard is not met here.

A court may exercise specific jurisdiction when the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111 (internal quotations and citations omitted).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (*citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

United States District Court
Northern District of California

### 2. Discussion

#### a. Purposeful Availment

Under the first prong of the Ninth Circuit's test for specific jurisdiction, a plaintiff must establish that the defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802. A purposeful availment analysis "is most often used in suits sounding in contract," while a purposeful direction analysis "is most often used in suits sounding in tort." *Id.* Thus, the Court will apply the purposeful availment test.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's action in the forum, such as executing or performing a contract there." *Id.* (quoting *Hanson v. Deckla*, 357 U.S. 235, 253 (1958)). "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2004) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). "Rather, there must be 'actions by the defendant himself that create a "substantial connection" with the forum State.' " *Id.* (quoting *Burger King*, 471 U.S. at 475 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))). "Merely 'random, fortuitous, or attenuated' contacts are not sufficient." *Id.* (quoting *Burger King*, 471 U.S. at 475 (internal quotation marks omitted)). To determine whether this requirement is satisfied, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

#### i. Prior Negotiations

"If the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum states laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citation omitted). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." *Id.* (citation omitted).

The location of the negotiations does not support purposeful availment here because Nurse did not travel to California to conduct any negotiations. *See Long v. Authentic Athletix LLC*, No.

United States District Court
Northern District of California

16-CV-03129-JSC, 2016 WL 6024591, at *4 (N.D. Cal. Oct. 14, 2016), aff'd, 811 F. App'x 400 (9th Cir. 2020) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988)). The fact that Nurse contacted LeGarie in California by telephone during the negotiations does not support purposeful availment. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ("[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.") (internal quotation marks omitted).

It is less clear whether Nurse purposefully availed himself of the privilege of doing business in California by soliciting business in the forum state.  Plaintiffs contend that by contacting LeGarie to seek representation in connection with Nurse's contract negotiations with the Raptors, Nurse was soliciting business in California.  Yet the cases Plaintiffs cite suggest something more is required.  In *Long*, for example, the court found that the defendant had solicited business in California (the forum state) not only because he called the plaintiff in California and entered into an oral agreement whereby the plaintiff would recruit players for the defendant but also because the defendant entered into that agreement in order to develop a "presence" in California.  *Long v. Authentic Athletix LLC*,  2016 WL 6024591, at *2, 4 (holding that defendant "directly solicited business in California" based on "competent evidence that Defendants solicited and negotiated with Plaintiff, a California resident, to perform services on their behalf in California *and to help them expand their business presence in California*.").

Likewise, in *LocusPoint*, the court found that the defendant directly solicited business in the forum state by sending "an offering memorandum to Plaintiff, a California resident, which listed several television station assets that were for sale."  *LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-CV-01278-JSC, 2014 WL 3836792, at *5 (N.D. Cal. Aug. 1, 2014).  The court noted that "[e]xamples of solicitation that may satisfy purposeful availment include 'advertising in the forum State' or 'marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.' " *Id.* (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 382 (9th Cir.1990), rev'd on other grounds, 499 U.S. 585 (1991)).

On the other hand, in *Sarkis v. Lajcak* , the court held that there was no purposeful

availment where the defendant advertised an open position for a "Legal Counsel" in The Economist, a global weekly news magazine, and the plaintiff responded to the advertisement from California, providing California contact information in his cover letter and on his resume.  No. C-08-01911 RMW, 2009 WL 3367069, at *1 (N.D. Cal. Oct. 15, 2009), aff'd, 425 F. App'x 557 (9th Cir. 2011).  In affirming the district court's dismissal of the case based on lack of jurisdiction, the Ninth Circuit observed that it "was purely fortuitous that Sarkis had a California address when the parties negotiated his contract," finding that "[t]he purposeful availment requirement is intended to ensure that jurisdiction is not based on such 'random, fortuitous, or attenuated contacts.' " *Sarkis v. Lajcak*, 425 F. App'x 557, 558 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The facts here appear to fall somewhere between *Long* and *LocusPoint* on the one hand and *Sarkis*, on the other.  In contrast to the former, there are no facts here suggesting that Nurse was attempting to promote or sell any product in California or develop his own business or career opportunities in California.  But unlike the defendant in *Sarkis*, he did not broadly solicit applications for an agent to represent him via nationwide media but instead specifically contacted LeGarie in California.  The Court concludes, however, that merely seeking to enter into a contract with a California resident is not sufficient to show that a defendant is directly soliciting business in California where the agreement does not involve marketing the defendant's product or promoting its business in some way in the forum.  Otherwise, any contract to hire a California resident, regardless of the nature of the services to be performed under the agreement would constitute purposeful availment. Such a result appears to conflict with the rule that a "contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot v. Weston*, 780 F.3d at 1212.  Therefore, the Court finds that Plaintiffs have not established purposeful availment based on Nurse's solicitation of business in California.

ii.  Contemplated Future Consequences

"Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473.  Thus, for example, in *Long*, the court found that this factor favored a finding of purposeful availment based on "the parties' significant continuing obligations to each other[,]" citing evidence and allegations in the complaint indicating that "the parties' obligations . . . extended over a period of several years, as the parties entered into the oral contract in June 2010 and Defendants made their last payment of $31,000 to Plaintiff in February 2016."  2016 WL 6024591, at *5.  Similarly, in *Vuori*, the undersigned found that this factor supported a finding of purposeful availment where the parties envisioned that the agreement they were negotiating would lead to a long-term relationship.  *Vuori v. Grasshopper Cap. LLC*, No. 17-CV-06362-JCS, 2018 WL 1014633, at *14 (N.D. Cal. Feb. 22, 2018).

Here, the oral agreement between LeGarie and Nurse was open-ended with respect to duration, LeGarie Decl. ¶ 8, but both LeGarie and Nurse state in their declarations that they discussed not only the commission that LeGarie would charge for an assistant coach position (the position that Nurse was seeking in 2013, when he first contacted LeGarie) but also the commission that would apply if LeGarie helped Nurse obtain a head coaching job at some point in the future.  *See* LeGarie Decl. ¶ 7 ("I explained to Mr. Nurse that my fee for representing him as an assistant coach would be four percent of his gross contract, and that when he became a head coach it would drop down to three percent."); Nurse Decl. ¶ 6 ("He told me he would not charge any commission until he secured a head coaching job for me.").  These statements indicate the parties anticipated that LeGarie would represent Nurse in his negotiations with the Toronto Raptors on an ongoing basis and the oral agreement was not limited to the assistant coaching position that prompted Nurse's initial call to LeGarie.

Furthermore, the evidence indicates that the parties did, in fact, have an ongoing relationship that lasted approximately seven years whereby LeGarie represented Nurse in a series of contract negotiations with the Raptors, met with Nurse and Raptors executives on several

1    occasions in California (although Nurse's primary purpose in coming to California was team-

2    related and not to meet with LeGarie), and invoiced Nurse, who paid commissions to Plaintiffs in

3    California.  The Court concludes that the ongoing obligations between Nurse and Plaintiffs were

4    neither random nor fortuitous.

5           Nurse's reliance on *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) to support

6    a contrary conclusion is misplaced.  In that case, the plaintiff (a movie producer who lived in

7    California) attempted to negotiate the movie rights to a book by Gabriel Garcia Marquez, who

8    lived in Mexico City.  942 F.2d at 619.  Garcia Marquez "met with [the producer] once in

9    California, but entered the state for a social purpose[;] . . . ha[d] never owned property in the state,

10   nor ha[d] he ever conducted business on a regular basis or authorized any resident of the state to

11   do so on his behalf." *Id.*  at 620.  He had "maintained a checking account, not his principal one, in

12   Los Angeles since 1988 for the purposes of having an account in dollars for certain transactions

13   occurring outside of California." *Id.*  Similarly, his agent, who lived in Barcelona Spain, had few

14   contacts with California. *Id.*  The contract negotiations went on for approximately two years, with

15   the producer making trips to Cuba, Barcelona and Mexico City to meet with Garcia Marquez and

16   his agent, but ultimately were unsuccessful. *Id.*  When the movie producer sued Garcia Marquez

17   in California, the Court found purposeful availment on the basis that the contract envisioned

18   production of a film, "most of the work for which would have been performed in California." *Id.*

19   at 622.

20          Nurse contends that under *Roth*, the anticipated future consequences of the agreement do

21   not support a finding of purposeful availment because in contrast with the facts of *Roth*, the future

22   consequences of his agreement with LeGarie were to occur entirely in Canada and the

23   commissions he was to pay would be for his work in Canada. Motion at 8-9.  Nurse's reading of

24   *Roth* is too narrow, however.  In that case, it was not clear if the parties to the agreement would

25   have had a long-term relationship once the rights to Garcia Marquez's work were purchased by the

26   film producer but the evidence showed that nonetheless, the work that resulted from the contract

27   would have "centered on the forum." *Id.*  Nothing in *Roth* suggests that an agreement giving rise

28   to multi-year relationship between a resident of the forum state and an out-of-state defendant is not

United States District Court
Northern District of California

12

1    sufficient to support purposeful availment and the Court finds that under the facts here, it is.

2    Regardless of where Nurse would work under the contracts LeGarie negotiated on his behalf, the

3    agreement that is the basis of LeGarie's claims involved the ongoing provision of services by

4    LeGarie to Nurse and the commissions to be paid were for those services even if they came out of

5    the salary the Raptors would pay Nurse.  Therefore, the Court concludes the anticipated future

6    consequences of the agreement between Nurse and LeGarie were aimed at the forum.

7                          iii.  Terms of the Contract

8          "Terms that provide fair notice to a defendant that he may possibly be subject to suit in the

9    forum state weigh in favor of a purposeful availment finding."  *Vuori,* 2018 WL 1014633, at *14

10   (citation and internal quotations omitted).   While there is no written contract, the evidence before

11   the Court is that Nurse agreed to pay a commission for the contracts that LeGarie negotiated on his

12   behalf; that Plaintiffs sent Nurse at least seven invoices for LeGarie's services that reflect a

13   company address in San Francisco, California; and that Nurse paid Plaintiffs at least two times by

14   sending checks to Plaintiffs in California and four times by wiring the payments to a California

15   bank.  Courts have found such evidence supports a finding of purposeful availment.  *See Longyu*

16   *Int'l Inc. v. E-Lot Elecs. Recycling Inc*., No. 2:13-CV-07086-CAS, 2014 WL 1682811, at *5 (C.D.

17   Cal. Apr. 29, 2014) (holding that where invoices reflected California address and payments were

18   from California defendants were "on reasonable notice that they could expect to be called into

19   court in California").  Therefore, the Court finds that this factor supports a finding of purposeful

20   availment.

21                          iv.  Course of Dealing

22         In evaluating whether the parties' course of dealing supports a finding of purposeful

23   availment, courts look to whether the "quality and nature" of a defendant's relationship with the

24   plaintiff can be viewed as "random, fortuitous, or attenuated." *LocusPoint Networks, LLC v.*

25   *D.T.V., LLC*, 2014 WL 3836792, at *7 (citing *Burger King*, 471 U.S. at 479). Plaintiffs argue that

26   their relationship with Nurse was not random, fortuitous or attenuated, pointing to evidence that

27   the relationship lasted seven years, that they were in regular contact during that period and that

28   LeGarie negotiated four NBA contracts for Nurse, including a Head Coach contract that was

United States District Court
Northern District of California

13

United States District Court
Northern District of California

valued at $9 million. LeGarie Decl. at ¶¶ 12, 16, 22. They further contend LeGarie's acts within California on Nurse's behalf support the exercise of personal jurisdiction because acts of an authorized agent may be considered in determining whether a defendant has sufficient contacts with the forum.  Opposition at 11-12 (citing *Theo. H. Davies & Co. v. Republic of Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1998);  *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004)).

The Court finds Plaintiffs' reliance on their agency relationship with Nurse to establish purposeful availment unpersuasive.  In *Mitrano v. Hawes*, which is the only case Plaintiffs cite in which the actions of an agent gave rise to specific jurisdiction over the principal, the court found purposeful availment where the claims arose out of a lawsuit that the plaintiff had filed in the forum on the defendant's behalf.  377 F.3d at 407.  The court found that because the defendant had allowed the underlying action to proceed in the forum state he had ratified the plaintiff's choice of forum and therefore purposefully availed himself of the forum state's legal protections.  *Id.* In contrast to the facts of *Mitrano*, however, Plaintiffs do not point to any specific acts by Plaintiffs on Nurse's behalf that Nurse ratified and that were specifically aimed at the forum.  Nonetheless, the Court finds that the contacts between the parties were not random and fortuitous in light of the evidence that LeGarie conducted 90% of his work on Nurse's behalf in California, that Nurse sent payment for Plaintiffs' work to Plaintiffs' California bank at least six times, and that Nurse and Raptor executives met LeGarie in California in connection with LeGarie's representation of Nurse on numerous occasions.  The parties' course of dealing thus weighs in favor a finding of purposeful availment.[3]

---

[3] Nurse points to *Fujitsu-ICL Sys., Inc. v. Efmark Serv. Co. of Illinois*, No. 00-CV-0777 W (LSP), 2000 WL 1409760, at *4 (S.D. Cal. June 29, 2000) in support of a contrary result.  In that case, the parties had entered into three sales contracts involving the sale of ATMs, software and services. Although the plaintiff was a California corporation and two of the sales contracts contained a California choice of law provision – the third contained Illinois and New York choice of law provisions – the court found that there was no personal jurisdiction over the defendant in California.  2000 WL 1409760, at *1, 3.  In reaching that conclusion, the court relied on evidence that other than the sales agreements the defendant had little or no contact with California and further observed that there was no evidence defendant had requested performance in California or that the contract could not have been performed elsewhere.  *Id.* at *4.  With respect to course of dealings, the evidence showed that the parties' communications consisted of telephone calls and faxes, which are not sufficient to establish purposeful availment; the only two times the defendant was in California for meetings, the meetings were unrelated to the claims asserted in the case. Furthermore, payments were made to the plaintiff's Texas headquarters rather than to California.

14

### v.  Conclusion

Considering the factors discussed above, the Court concludes the purposeful availment requirement is satisfied.

### b.  "Arise out of" Requirement

To satisfy the second prong of the test for specific jurisdiction, which requires that the claims must arise out of the defendant's forum-related activities, courts in the Ninth Circuit apply a but-for test. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  Nurse contends this test is not met because Plaintiffs' claims arise out of conduct that occurred in Canada and not California. Motion at 10.  Here, Nurse entered into an ongoing contract with an agent who resides in California and did most of his work in California. But for that conduct, Plaintiffs' contract claims against Nurse would not have arisen.  Therefore, the Court concludes this requirement is met.  *See Long,* 2016 WL 6024591, at *6 ("If Defendants had not done business with Plaintiff and purposefully availed themselves of the forum state, Plaintiff would have no claims against them because he would not have suffered an injury that resulted out of the alleged breach of contract").

### c.  Whether Exercise of Jurisdiction is Reasonable

Because the Court concludes that Nurse has purposefully availed himself of the privilege of conducting business in California and Plaintiffs' claims arise out of Nurse's contacts with California, the burden lies with Nurse to establish that exercise of personal jurisdiction in California would be unreasonable.  To determine whether the exercise of jurisdiction is reasonable, and therefore, "comports with fair play and substantial justice," courts consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum
> state's affairs; (2) the burden on the defendant of defending in the

---

*Id.* Finally, the court relied on the rule that "when a buyer orders goods from another state, the buyer does not purposefully avail itself of that state's laws where the seller controls the location of performance."  *Id.* at *4 (*citing Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161 (9th Cir. 1975)).

Here, the nature of the parties' relationship was not three discrete contracts for the purchase of goods and services but an ongoing relationship that involved at least six payments made to California over seven years and numerous meetings in California with both Nurse and Raptor executives to discuss Nurse's contracts.  The Court therefore finds that *Fujitsu-ICL Sys., Inc.* is distinguishable from the facts here.

forum; (3) the extent of conflict with the sovereignty of the
defendant's state; (4) the forum state's interest in adjudicating the
dispute; (5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient
and effective relief; and (7) the existence of an alternative forum.

*Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981).

Based on consideration of these factors, the Court concludes Nurse has not established that

exercise of jurisdiction is unreasonable.

In considering the first factor, "the *extent* of interjection is to be considered." *Core-Vent*

*Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993), holding modified by *Yahoo! Inc. v.*

*La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (emphasis added).

Thus, "[t]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated

and the less reasonable is its exercise." *Id.* (quoting *Insurance Company of North America v.*

*Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)). Here, Nurse's contacts with the forum

are relatively attenuated even though they are sufficient to meet the purposeful availment

requirement. Therefore, this favor weighs slightly in favor of Nurse. *See id.* (finding that this

factor weighed in favor of defendant due to attenuated contacts with forum but that it did not

weigh "heavily" in his favor given that the court's "assumption that [his contacts] were sufficient

to meet the purposeful availment prong").

The second factor weighs in favor of Plaintiffs. This factor requires the court to consider

the burden on the defendant of litigating in the forum. *Fed. Deposit Ins. Corp. v. British-Am. Ins.*

*Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) (citation omitted). The threshold for establishing that it

would be unreasonable to require the defendant to litigate in the forum is high, however. Unless

the inconvenience to the defendant "is so great as to constitute a deprivation of due process, it will

not overcome clear justifications for the exercise of jurisdiction." *Hirsch v. Blue Cross, Blue*

*Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir. 1986) (citation omitted). Nurse argues that he

would be "greatly inconvenienced" if he were required to litigate in California, but he provides no

evidence demonstrating that it would amount to a deprivation of due process. Given that Nurse

travels to California for coaching related activities, *see* Nurse Decl. ¶ 10, and is currently

represented by an agent in California, *see* Cohn Decl., and in light of the increased ability of courts

and parties to litigate and adjudicate by remote means in response to COVID-19, the Court

concludes the burden on Nurse of litigating in California is not substantial enough to weigh

against a finding of reasonableness.

The third factor considers the extent of any conflict of sovereignty. "Great care and reserve

should be exercised when extending our notions of personal jurisdiction into the international

field." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty*., 480 U.S. 102, 115

(1987) (internal quotations omitted). Further, "a foreign nation presents a higher sovereignty

barrier than another state within the United States." *Roth v. Garcia Marquez*, 942 F.2d at 623–24

(citing *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co*., 828 F.2d 1439, 1444 (9th Cir. 1987)( (citation

omitted).  "Nonetheless, '[t]he factor of conflict with the sovereignty of the defendant's state is not

dispositive because, if given controlling weight, it would always prevent suit against a foreign

national in a United States court." *Roth*, 942 F.2d at 623-624 (citing *Sinatra v. Nat'l Enquirer,

Inc*., 854 F.2d 1191, 1200 (9th Cir. 1988)).   Thus, for example, in *Sinatra*, "the scales tipped for

the plaintiff on this issue," largely because "the defendant had an agent in the United States,"

unlike the defendant in *Roth*, whose agent lived in Spain. Here, as in *Sinatra*, Nurse had an agent

in the United States. Moreover, while Nurse's employment contracts were with a Toronto team, he

states in his declaration that for the past five years he has been a resident of Florida and that before

that he was a resident of Texas.  Nurse Decl. ¶ 3. These facts also undercut his argument that

exercising jurisdiction over him in California would give rise to a conflict of sovereignty between

California and Canada.  Consequently, the Court concludes this factor slightly favors Plaintiffs.

The interest of California in adjudicating the dispute is neutral.  Although Plaintiffs reside

in California, Nurse does not and Nurse's contacts with California are attenuated, as discussed

above, reducing California's interest in resolution of this dispute. *See Parallel Media, LLC v.

D&M Cap. Grp., LLC*, No. CV1005666MMMFFMX, 2011 WL 13217278, at *23 (C.D. Cal. May

31, 2011).  However, "[i]n the Ninth Circuit, . . . courts have accorded this factor little weight."

*Id.* (citing *Roth*, 942 F.2d at 624 ("There is little case law [regarding the state's interest in

adjudication] in the contracts context in this circuit. . . . [T]his factor seems to be a toss-up, with

perhaps a slight edge going to appellees"); *Ting v. Orbit Communication Co., Ltd*., 105 F.3d 666,

United States District Court
Northern District of California

1   1997 WL 8470, at * 5 (9th Cir. Jan. 7, 1997) (Unpub. Disp.) ("Fourth, the forum state's interest in

2   adjudication is a toss-up. As we noted in *Roth*, little case law exists in this circuit regarding a

3   forum's interest in protecting its residents in the contracts context. . . . Thus, this factor favors

4   neither party"); *Joe Boxer Corp. v. R. Siskind & Co., Inc.*, No. C 98–4899 SI, 1999 WL 429549, *

5   6 (N.D. Cal. June 28, 1999) ("With respect to the State of California's interest in providing a

6   forum for Boxer's action, California law is in conflict as to whether the state has an interest in

7   providing a forum for a private contractual dispute. This factor is therefore neutral" (internal

8   citations omitted))).

9          The fifth factor, which is judicial efficiency, requires the Court to evaluate where the

10   witnesses and evidence are likely to be located. *Core–Vent*, 11 F.3d at 1489.  It is likely that

11   witnesses and evidence will be located both in California and Canada, given that Plaintiffs'

12   representation of Nurse involved conduct that occurred in both places.  Regardless, even if Nurse

13   demonstrated that most of the witnesses and evidence were located in Canada, "this factor is no

14   longer heavily weighted in light of modern technology." *Autodesk, Inc. v. Kobayashi + Zedda*

15   *Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citation omitted).   Therefore, this

16   factor is neutral.

17          The sixth factor, the importance of the forum to the plaintiff's interest in convenient and

18   effective relief, weighs in Plaintiffs' favor based on convenience.  It is also undisputed that the

19   seventh factor favors Nurse because Canada provides an alternative forum.

20          Balancing the factors discussed above, the Court concludes that Nurse has not made a

21   compelling case that it would be unreasonable to require him to litigate in California.

22          Accordingly, the Court concludes there is specific jurisdiction over Nurse in this case.

23   **B.   Whether Venue is Proper**

24          A party may bring a motion to dismiss an action for improper venue pursuant to Rule

25   12(b)(3). On a motion to dismiss pursuant to Rule 12(b)(3), "the pleadings need not be accepted as

26   true, and the court may consider facts outside of the pleadings."  *Murphy v. Schneider National,*

27   *Inc.,* 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted).   In evaluating the facts, "the trial

28   court must draw all reasonable inferences in favor of the non-moving party and resolve all factual

United States District Court
Northern District of California

18

conflicts in favor of the non-moving party." *Id.* at 1138.  Where there are genuine factual

disputes, the district court has the discretion to hold a Rule 12(b)(3) motion in abeyance until it

holds an evidentiary hearing on the disputed facts. *Id.* at 1139.

Under 28 U.S.C. § 1391(b), "a civil action may be brought in:   1) a judicial district in

which any defendant resides, if all defendants are residents of the State in which the district is

located; 2) a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated; or

3) if there is no district in which an action may otherwise be brought as provided in this section,

any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action."   The plaintiff bears the burden of showing that venue is proper. *See*

*Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had

the burden of showing that venue was properly laid in the Northern District of California.").

Here, there is no dispute that Nurse does not reside in this district and therefore, that

Section 1391(b)(1) does not apply.  There is sufficient evidence, however, to establish that a

substantial part of the events or omissions that gave rise to Plaintiffs' claims occurred in this

district under Section 1391(b)(2).  Courts have held that § 1391 " 'does not require that a majority

of the events have occurred in the district where the suit is filed, nor does it require that the events

in that district predominate.' " *Artec Group, Inc. v. Klimov*, No. 15-cv-03449-RMW, 2015 WL

9304063, at *7 (N.D. Cal., Dec. 22, 2015) (quoting *Rodriguez v. Cal. Highway Patrol*, 89

F.Supp.2d 1131, 1136 (N.D. Cal. 2000)). "Rather, 'for venue to be proper, significant events or

omissions material to the plaintiff's claim must have occurred in the district in question, even if

other material events occurred elsewhere.' " *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No.

11-cv-02460-LHK, 2011 WL 2607158, at *10 (N.D. Cal., July 1, 2011) (quoting *Gulf Ins. Co. v.

Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).  In contract disputes, "courts have 'looked to

such factors as where the contract was negotiated or executed, where it was to be performed, and

where the alleged breach occurred.' " *Id.* (quoting *Gulf Ins. Co*., 417 F.3d at 357). Thus, under §

1391, "venue may be proper in multiple districts if a 'substantial part' of the underlying events

took place in each of those districts." *Id.* (citing *Gulf Ins. Co*., 417 F.3d at 356).

1    Although many of the events relevant to Plaintiffs' claims occurred in Canada, significant

2    events also occurred in this district.  In particular, LeGarie resides in this district and his company

3    is also based here; LeGarie has also supplied a declaration stating that he performed 90 % of the

4    work on the contract in this district.  LeGarie's company, LeGarie Management, Inc. is a

5    California Corporation based in San Francisco and LeGarie and his company performed a

6    significant portion of the work under the agreement with Nurse in this district. Therefore, the

7    Court concludes that venue is proper in this district under § 1391(b)(2).

8    ### C.   Whether the Accounting Claim Fails to State a Claim

9    #### 1.   Legal Standards Under Rule 12(b)(6)

10    A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

11    for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss

12    under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

13    *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

14    is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

15    sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

16    that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

17    In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

18    takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

19    non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

20    Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

21    would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

22    1990).  A complaint must "contain either direct or inferential allegations respecting all the material

23    elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v.*

24    *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

25    1106 (7th Cir. 1984)).

26    #### 2.   Discussion

27    Nurse contends Plaintiffs' accounting claim fails to state a claim because under California

28    law, accounting is an equitable remedy rather than an independent cause of action.  Plaintiffs

United States District Court
Northern District of California

correctly observe that courts in California have gone both ways on this question. *See, e.g.,*

*Dahon N. Am., Inc. v. Hon*, No. 2:11-CV-05835-ODW, 2012 WL 1413681, at *12 (C.D. Cal. Apr.

24, 2012) (holding that accounting is an independent cause of action under California law) (citing

*Teselle v. McLoughlin*, 173 Cal.App.4th 156, 179 (2009)); *Periguerra v. Meridas Cap., Inc.*, No.

C 09-4748 SBA, 2010 WL 395932, at *4 (N.D. Cal. Feb. 1, 2010) (holding that under California

law, an accounting is generally a remedy in equity but that a "request for an accounting can be

alleged as a cause of action when a defendant owes a fiduciary duty to a plaintiff which requires

an accounting, and that some balance is due to the plaintiff that can only be ascertained by an

accounting.") (citing *Teselle*, 173 Cal. App. 4th at 179); *cf. Mahoney v. Bank of Am., Nat. Ass'n*,

No. 13-CV-2530-W JMA, 2014 WL 314421, at *11 (S.D. Cal. Jan. 28, 2014) ("Accounting 'is not

an independent cause of action but merely a type of remedy and an equitable remedy at that.' ")

(quoting *Batt v. City & Cnty. of San Francisco*, 155 Cal.App.4th 65, 82 (2007)); *Fradis v.*

*Savebig.com*, No. CV 11-07275 GAF JCX, 2011 WL 7637785, at *8 (C.D. Cal. Dec. 2, 2011) ("A

number of courts have held that an accounting is merely an equitable remedy, and therefore cannot

be maintained as an independent cause of action.").

      The undersigned has found that under California law, an accounting "is not an independent

cause of action but merely a type of remedy." *Amer v. Wells Fargo Bank NA*, No. 17-CV-03872-

JCS, 2017 WL 4865564, at *13 (N.D. Cal. Oct. 27, 2017) (citing *Batt v. City & County of San*

*Francisco*, 155 Cal. App. 4th 65, 82 (2007) (citation omitted), disapproved on other grounds by

*McWilliams v. City of Long Beach*, 56 Cal. 4th 613, 155 Cal.Rptr.3d 817, 300 P.3d 886 (2013)).

Likewise, the Court finds here that Plaintiffs' request for an accounting is not properly asserted as

a separate cause of action. Therefore, that claim will be dismissed without leave to amend but

without prejudice to Plaintiffs' seeking an accounting remedy in connection with their remaining

claims. The Court declines to reach Nurse's objections that Plaintiffs have not alleged a special

relationship or that the determination of the amount owed to Plaintiffs is so complex as to require

an accounting as it finds that these objections are premature. *See Amer*, 2017 WL 4865564, at

*13.

## IV.    CONCLUSION

For the reasons stated above, the Motion is DENIED as to Nurse's challenges to personal jurisdiction and venue.  The Motion is GRANTED with respect to the accounting claim (Claim Five), which is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: December 6, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge